## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JAMES CRITELLI, RYAN THEODORE,
TAYLOR EGGERICHS, RAY CUNNINGHAM
ERIK VOLEK, ANDREW KUMNICK,
and all other similarly situated,

      Plaintiffs,

vs.                    Case No.: 6:25-cv-01780-AGM-LHP

DANAHER CORPORATION, PALL
CORPORATION, BECKMAN COULTER, INC.,
GLOBAL LIFE SCIENCES SOLUTIONS
USA LLC d/b/a CYTIVA, RADIOMETER
AMERICA, INC.

  Defendants.

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Danaher Corporation's ("Danaher") Diversity, Equity and Inclusion Policy ("DEI

Policy"), reaches far beyond ensuring an equal opportunity workplace. It establishes

functional quotas in promotions and is the source of systemic discrimination against

white men. Plaintiffs James Critelli, Ryan Theodore, Taylor Eggerichs, Erik Volek

Ray Cunningham, and Andrew Kumnick (collectively "Named Plaintiffs"), current

and former long-term employees with Pall Corp., Beckman Coulter, Global Life

Sciences Solutions USA LLC (hereinafter "Cytiva"), and Radiometer America, Inc.,

on behalf of themselves and others similarly aggrieved, bring this action to hold

1

Danaher (including its wholly owned subsidiaries, collectively "OpCos"), accountable for violating their federally protected rights, as in support thereof state:

## <u>NATURE OF THE CLAIMS</u>

1. Named Plaintiffs, white men, allege they have been discriminated against based on race in violation of 42 U.S.C. § 1981.

2. Plaintiff Critelli alleges discrimination based upon his gender, male, and race, white, in violation of Title VII and the Florida Civil Rights Act, Ch. 760.

3. Plaintiff Cunningham alleges discrimination based upon his gender, male, and race, white, in violation of Title VII and the Massachusetts Fair Employment Practices Act, G.L. 151B.

4. Plaintiff Volek alleges discrimination based upon his gender, male, and race, white, in violation of Title VII and the New York State Human Rights Law, Article 15 §§ 290-301.

5. Plaintiff Kumnick alleges discrimination based upon his gender, male, and race, white in violation of Title VII and the California Fair Employment and Housing Act, Gov. Code § 12940 *et seq.*

6. Plaintiffs Critelli, Theodore and Eggerichs were formerly employed by Pall Corporation, a Danaher OpCo.

7. Plaintiff Volek was formerly employed by Beckman Coulter, a Danaher OpCo.

2

8.     Plaintiff Kumnick was formerly employed by Radiometer America, Inc., a Danaher OpCo.

9.     Plaintiff Cunningham is presently employed by Global Life Sciences Solutions USA LLC, which does business as Cytiva, and is also a Danaher OpCo.

10.    Danaher is an American Fortune 200 company. It operates globally, primarily in the life sciences, diagnostics and biotechnology sectors. Danaher, a conglomerate, is comprised of more two dozen wholly owned subsidiaries (also referred to as "OpCos"), the largest of which are Pall Corporation, Cytiva US LLC, Beckman Coulter, Inc., Cepheid, Inc., HemoCue AB, Leica Microsystems GmbH, Leica Geosystems, Inc., Devicor Medical Products, Radiometer America, Inc., Abcam Ltd., Aldevron, LLC, Genedata AG, ID Business Solutions Ltd., Integrated DNA Technologies, Inc., Molecular Devices, LLC, Phenomenex, Inc., and AB Sciex LLC. (collectively "Danaher" or "OpCos").[1] Collectively, Danaher and its subsidiaries employ over 25,000 employees in the United States.

11.    Danaher has contracts with the United States Federal Government under which it provides goods and services.

12.    Danaher implemented a DEI Policy that is discriminatory against white men. Danaher required its OpCos to implement and execute the DEI Policy. As a

---

[1] Danaher refers to its wholly owned and indirectly owned subsidiaries as "OpCos." Except for Danaher, all defendants in this action are Danaher OpCos. For purposes of this action, unless otherwise specified, Danaher includes its OpCos.

direct result of the DEI Policy, white men, including Named Plaintiffs, have been systematically excluded from hiring and promotion opportunities that are diverted to women and non-whites. Danaher refers to non-whites as People of Color ("POC"). Danaher classifies women and non-whites as "underrepresented."

13.     Danaher has implemented functional quotas for hiring women and POC. Danaher manipulates job descriptions and creates "shortlists" of diverse candidates to ensure its internal quotas are satisfied.

14.     Danaher's DEI Policy favors women and POC in all aspects of employment while discriminating against white men. Diverse candidates receive hiring and promotional opportunities which are not available to white men.

15.     Danaher's DEI Policy has permeated all aspects of employment at Danaher and its OpCos, and as a result, employees that are not women or POC have been subjected to unlawful discrimination.

16.     Named Plaintiffs, on behalf of the putative Classes of aggrieved employees, all of whom were directly harmed by Danaher's DEI Policy, bring this action to hold Danaher accountable for unlawful discrimination.

## **PARTIES**

17.     Plaintiff Critelli is a white man and a citizen of the United States.

18.     Plaintiff Critelli was employed by Pall Corporation from 2012 to April 18, 2025. While Plaintiff Critelli was employed by Pall Corporation, he applied for

4

several positions with Beckman Coulter, Inc., ("Beckman Coulter"), a Danaher OpCos.

19.    Plaintiff Theodore is a white man and a citizen of the United States.

20.    Plaintiff Theodore was employed by Pall Corporation from 2013 until January 2024.

21.    Plaintiff Eggerichs is a white man and a citizen of the United States.

22.    Plaintiff Eggerichs was employed by Pall Corporation from July 2022 until June 2024.

23.    Plaintiff Volek is a white man and a citizen of the United States.

24.    Plaintiff Volek was employed by Beckman Coulter from 2017 until June 2025.

25.    Plaintiff Kumnick is a white man and a citizen of the United States.

26.    Plaintiff Kumnick was employed by Radiometer America, Inc. from 2022 until September 2025.

27.    Plaintiff Cunningham is a white man and a citizen of the United States.

28.    Plaintiff Cunningham has been employed by Cytiva, a Danaher OpCo, since 2019.

29.    Pall Corporation is a Danaher OpCos, employs over 5,000 employees in the United States and operates a large facility in Deland, Florida.

30.    Beckman Coulter is a Danaher OpCo and employs over 5,000

employees in the United States.

31.     Cytiva employs over 5,000 employees in the United States.

32.     Radiometer is a Danaher OpCo and employs over several thousand employees in the United States.

33.     Danaher is the parent company to its OpCos, including Defendants Pall Corporation, Beckman Coulter, Cytiva and Radiometer.

34.     Danaher maintains centralized control over its OpCos, including all recruiting and hiring practices. Danaher's policies and practices are imposed upon all its OpCos.

35.     Danaher dictates policy for its OpCos, and has the power to implement, enforce and ensure compliance with its policies, including the DEI Policy.

36.     Danaher dictates its OpCos' compensation and performance management measures, including management performance metrics and bonus compensation.

37.     For all practical purposes, Danaher's level of policy-making and financial control creates an integrated enterprise between Danaher and its OpCos.

38.     As OpCos, Pall Corporation, Beckman Coulter, Cytiva, and Radiometer abided by, implemented and executed Danaher's DEI Policy.

39.     Alternatively, because Danaher exerted significant control over the terms and conditions of its OpCos' employees, Danaher is a joint-employer of its

6

OpCos' employees.

40.    During all relevant times, Danaher was Named Plaintiffs' employer within the meaning of all applicable statutes.

## JURISDICTION AND VENUE

41.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiffs' and putative Class Members' rights pursuant to Title VII and 42 U.S.C. § 1981.

42.    Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action, including employment practices alleged herein, occurred in this district.

43.    The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a) because those claims are so closely related to the federal claims in this case that they form part of the same case or controversy under Article III of the United States Constitution. Plaintiffs' federal and state law claims arise from the same facts and would ordinarily be expected to be resolved in one judicial proceeding.

## ADMINISTRATIVE PREREQUISITES

44.    Plaintiff Critelli has exhausted his administrative remedies and complied with all statutory prerequisites to his Title VII claims. Plaintiff Critelli filed a charge of race, national origin, and gender discrimination with the Equal

Employment Opportunity Commission ("EEOC") on or about January 22, 2025.

45.    On June 17, 2025¸ the EEOC issued Plaintiff Critelli a Notice of Right to Sue letter.

46.    Plaintiff Critelli brings this action within 90 days of receiving his Notice of Right to Sue.

47.    Plaintiff Cunningham filed a charge of race, national origin, and gender discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 23, 2025.[2]

48.    Plaintiff Volek filed a charge of race, national origin, and gender discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 1, 2025.[3]

49.    Plaintiff Kumnick dual filed a charge of race, national origin, and gender discrimination with the Equal Employment Opportunity Commission ("EEOC") and California Civil Rights Department on November 3, 2025.

50.    Plaintiff Kumnick has been issued his Notice of Right to Sue from CCRD.

51.    All other prerequisites to the filing of this suit have been met.

---

[2] Plaintiff Cunningham has requested a Right to Sue from the EEOC. Under the Massachusetts statutory framework, an individual is expressly authorized to pursue such relief upon the expiration of ninety (90) days from the filing of a complaint with the Commission. Having fully satisfied this statutory waiting period, Plaintiff Cunningham now properly avails himself of the rights afforded to him under Massachusetts law to pursue his claims in court.
[3] Plaintiff Volek has requested his Right to Sue from the EEOC.

## <u>FACTUAL ALLEGATIONS</u>

### *Danaher's DEI Policy*

52.     For all times relevant to Plaintiffs' allegations, Danaher has maintained

a DEI policy. The DEI Policy applies to all aspects of employment throughout the

Danaher system[4]:

> This Diversity, Equity and Inclusion Policy (the "Policy") sets out the principles upon which Danaher's D+I program is based and the requirements applicable to our employees (whom we refer to as "associates") and businesses. This policy applies to (among other topics) our practices and policies on talent acquisition and selection; compensation and benefits; development and training, career growth, associate engagement and inclusion; and transitions. In this Policy, we refer to Danaher and its directly and indirectly controlled subsidiaries worldwide as "Danaher".

53.     The DEI Policy applies equally to all of Danaher's OpCos.

54.     Since at least 2021, Danaher imposed DEI requirements upon its

subsidiaries through its DE&I Policy Deployment Initiative. *Danaher Corp. Dec.*

*31, 2023, Form 10-K. p. 9.*

> **Application, Governance and Communication**
>
>     a.     <u>Application</u>. This Policy applies to Danaher Corporation and all of its directly and indirectly controlled subsidiaries worldwide, and each of their respective associates.
>     b.     <u>Governance</u>. This Policy (including each individual section thereof) has been approved by Danaher Corporation's President and Chief Executive Officer and Senior Vice President-Human Resources.
>     c.     <u>Communication</u>. Danaher commits to communicating this Policy to its associates and external stakeholder through Danaher's intranet, external website, annual Sustainability Report and other channels. We also commit to reporting on Danaher's progress and impact with respect to the elements reflected in this Policy in our annual Sustainability Reports.
>
> *Policy revised June 10, 2022*

---

[4] Consistent with Danaher's DEI Policy, Danaher and its "directly and indirectly controlled" subsidiaries are referred to collectively as "Danaher" unless otherwise specified.

55.     When jobs requisitions are posted for any Danaher OpCo, they are posted on a centralized Danaher website. Employees can apply for open positions at any of Danaher's subsidiaries. For example, a Pall Corporation employee can apply for an open position at any Danaher OpCo.

56.     The DEI Policy establishes a standardized approach for evaluating potential hires and promotions, with decisions influenced by considerations of race and gender.

57.     As further described herein, in reality, the DEI Policy was a quota system that discriminated against white men.

58.     The DEI Policy classifies people who are not white as "People of Color ('POC').[5] Women and POC, in combination, are considered "under-represented."

59.     The DEI Policy provides for preferential consideration for women and POC.

60.     There is nothing unlawful about striving to ensure an organization offers equal employment opportunities to everyone. There are several federal, state and local laws intended to prevent workplace discrimination and hold employers accountable for discrimination based upon protected characteristics such as race and sex. In fact, in March 2025, the EEOC issued a policy statement on DEI, echoing

---

[5] Danaher's definition of "POC" and "underrepresented," and which groups of people are covered in which instances, is presently unknown. Regardless, white men (and perhaps other races) are not covered and are therefore subjected to unlawful discrimination.

equal application of Title VII to everyone:

> Diversity, Equity and Inclusion (DEI) is a broad term that is not defined in Title VII of the Civil Rights Act of 1964 (Title VII). Title VII prohibits employment discrimination based on protected characteristics such as race and sex. Under Title VII, DEI initiatives, policies, programs, or practices may be unlawful if they involve an employer or other covered entity taking an employment action motivated—in whole or in part—by an employee's or applicant's race, sex, or another protected characteristic.

61.    Danaher's DEI-driven policies and practices far exceeded the bounds of the EEOC's guidance, requiring race and gender must be considered when evaluating internal candidates for promotion or transfer within Danaher and its OpCos.

62.    For example, Danaher's DEI Policy required that 50% of candidates interviewed for open positions be from "underrepresented" populations.



**Targeting Diversity of Slates and Hires**

Implementing diverse slates at Danaher and across OpCos is a strategy with the goal to have 50% underrepresented candidates interviewed.

Diverse slates show the possibility and range of qualified talent available in the market, which may include prospects, passive profiles, or active candidates. By taking these discreet and specific actions to broaden candidate pools, we help increase the diversity of candidates.

Through these intentional diversity recruitment efforts, Danaher can accelerate our talent outreach and maximize the chances of hiring the most qualified candidate of every gender, race, and ethnicity.

63.    Danaher's DEI Policy is anything but "discreet." By its own terms, it is

"specific" and "intentional," manipulating the composition of interview slates consistent with the DEI Policy and functional hiring quotas.

64.    Women and POC have comprised less than 50% of the qualified applicants for management positions. By artificially populating an interview pool with under-represented candidates disproportionate to the applicant pool, Danaher discriminated against applicants who were not from an underrepresented group. Specifically, white men were disproportionately excluded from the interview pool because Danaher was motivated by race and sex when selecting candidates for open positions.

65.    Women and POC have comprised less than 50% of the qualified applicants for team lead positions. By artificially populating an interview pool with under-represented candidates disproportionate to the applicant pool, Danaher discriminated against applicants who were not from an underrepresented group. Specifically, white men were disproportionately excluded from the interview pool because Danaher was motivated by race and sex when selecting candidates for open positions.

66.    Danaher implemented and dictated the DEI Policy throughout the Danaher system, including its OpCos. The DEI Policy is discriminatory, and the source of unlawful and discriminatory employment practices.

67.    Danaher's centralized Talent Acquisition Department ("Talent

Acquisition") controlled the recruiting and hiring process for open positions and implemented Danaher's DEI Policy therein.

68.    Open positions were posted internally for current Danaher employees across all of Danaher's OpCos.

69.    Talent Acquisition collected applications for open positions. It screened applicants to create a slate of candidates for the hiring manager to interview. That is, it made an initial determination as to which applicants progressed to the "candidate" stage in the hiring process.

70.    Applicants that did not progress to the candidate stage did not have an opportunity to interview with the hiring manager were effectively "rejected" for the position. Only candidates selected for interview remained in contention for the position.

71.    Danaher modified job descriptions and requirements to "open the aperture" to diverse applicants. Differently put, diverse applicants did not have to meet the same job requirements as applicants that were not diverse, *i.e.* white men.

72.    Danaher modified job requirements for diverse applicants to ensure Danaher satisfied its race and sex driven hiring quotas.

73.    Diverse candidates that satisfied the "flexible" job requirements were placed on a shortlist to be interviewed by the hiring manager. The shortlist was an advantage specifically reserved for diverse candidates. There was no shortlist for

non-diverse applicants. Put differently, there were different standards for applicants based on race and sex.

74.    Only *after* Talent Acquisition performed its initial screening were interview slates presented to the hiring manager for interviews. Hiring managers were presented with a pre-selected shortlist of diverse candidates. There was no shortlist for non-diverse candidates.

75.    Danaher required that 50% of interviewed candidates be diverse or female candidates. This far exceeded the percentage of diverse or female applicants in the initial applicant pool.

76.    Interview slates consisted of a disproportionately high percentage of females and diverse candidates relative to the overall applicant pool.

77.    Because there were a finite number of applicants selected for interviews with the hiring manager, white men were disproportionately deprived of interview opportunities relative to their representation in the applicant pool.

78.    This process has effectively limited the hiring manager's ability to make merit-based selections, resulting in outcomes engineered to satisfy Danaher's hiring quotas.

79.    Danaher encouraged discriminatory hiring practices. Hires that moved Danaher closer to its functional quotas were considered wins; hiring decisions that were not aligned with Danaher's objectives were considered losses.

80.     Hiring managers faced pressure to increase minority representation to meet Danaher's diversity objectives, reinforcing the company's quota-driven approach to hiring and promotion.

81.     Danaher required its leaders to follow DEI Performance Objectives. Performance objectives were tied to Diversity & Equity priorities.

82.     Danaher tethered manager performance evaluations and compensation to meeting DEI Policy objectives.

83.     Managers who did not meet Danaher's *de facto* quotas received lower performance evaluations and lower discretionary compensation.

### *The DEI Policy in Application*

84.     Danaher's DEI Policy required managers to adopt behaviors intended to favor applicants and employees that were not white. A presentation for managers at Pall Corporation. included the following:

## Pall D+I P4G Example Goal



1.  Attract, engage and develop a diverse associate population through the following actions *(Please pick 2-3 actions from the list below that are most relevant)*
    - By July 2023, I will develop an organization plan that assesses the representational mix of my team. I will identify gaps vs. Pall's aspirational diversity goals and make recommendations to my manager based on internal/external best practices to evolve this representation mix.
    - For all talent acquisition searches throughout 2023, drive 100% diverse slates and diverse interview teams.
    - Achieve a 5pt improvement on the Diversity/Inclusion dimension in the annual engagement survey.
    - Achieve annual voluntary turnover of underrepresented talent <5%.
    - Increase diversity representation of my Succession plan by 20%.

85.    "The 'Example Goal' included 'driv[ing] 100% diverse slates and interview teams.'"

86.    Danaher's DEI Policy fomented management behaviors that treated diverse applicants more favorably than white candidates.

87.    A 2024 email from Pall Corporation's Vice President, David Koch, reinforced Danaher's discriminatory hiring practices "*Danaher's requirement that 50% of interviewed candidates be diverse and Pall's objective to hire 34.4% of women and 37.2% POC (people of color)*."

### Danaher's DEI Policy is a Quota System

88.    Danaher's DEI Policy is discriminatory against applicants and employees that are not diverse or underrepresented. For example, Danaher's 2024 Sustainability Report proclaimed success because over two-thirds (68%) of its new hires in the United States in 2023 were women or POC, and POC represented 42% of its workforce:

- 63,000 associates in more than 50 countries
- Invested nearly $12 million in our communities in 2023, focused on Building a Diverse, STEM-ready Workforce, Advancing Healthcare Innovation and Protecting the Environment
- Adopted a Diversity, Equity and Inclusion Policy
- 40% of 2023 global new hires were women, and at the end of 2023 women represented 40% of our global workforce
- 68% of 2023 U.S. new hires were women and/or People of Color (POC), and at the end of 2023 POCs represented 42% of our U.S. workforce
- Maintained total direct compensation pay equity for women globally and for racial and ethnic minorities in the U.S.

- Women represent 40% of global workforce by 2025
- POC represent 38% of U.S. workforce by 2025
- 100% total direct compensation pay equity annually



89.    Put another way, Danaher celebrated success because less than 1/3 of people it hired in the United States in 2023 were white men.

90.    The same Sustainability Report also contained a POC quota, touting "POC represent 38% of U.S. workforce by 2025."

91.    Women and POC employees received preferential hiring treatment because of their gender and race. White men made up far more than 1/3 of the qualified applicant pool but were less than 1/3 of Danaher's hires.

92.    Danaher discriminated against white men, who were disproportionately rejected for promotions and internal hiring opportunities because Danaher unlawfully considered sex and race in hiring decisions.

93.    A poster in Pall Corporation's breakroom reiterated Danaher's DEI quotas, specifying that *38% of Danaher's U.S. workforce will be comprised of people of color by 2025.*



94.    When a qualified applicant is denied the opportunity to interview for a position because of their race, sex or age, it is an adverse employment action, regardless of whether they would have ultimately been selected for the position. Without the opportunity to interview, the excluded applicant has no chance of getting the job. Similarly, they are deprived of the networking opportunity and experience of interviewing for more advanced or different positions.

***Plaintiff Critelli***

95.    Plaintiff Critelli is a white man. Plaintiff Critelli was subjected to unlawful discrimination based upon his race and sex.

96.    Plaintiff Critelli began his employment with Pall Corporation in 2012.

97.    Pall Corporation was acquired by Danaher in 2015.

98.    Plaintiff Critelli was employed in various roles at Pall Corporation's Deland, Florida facility. These roles have included Director of Facilities, Engineering Operations Manager, Focus Factory Manager, and most recently, Process Engineering Manager.

99.    In the years preceding the filing of this action, Plaintiff Critelli applied for multiple positions at Danaher Corporation and its OpCos including Pall Corporation (11), Beckman Coulter (8) and Cytiva (2). The positions would have been advancements or promotions, and Plaintiff Critelli was qualified for every position for which he applied. The dates Plaintiff Critelli applied, and the positions for which he applied, are set forth below.

| 11/04/2021 | Director - Supply Chain Planning | Cepheid, Inc. |
|---|---|---|
| 03/31/2022 | Plant Manager | Pall Corporation |
| 07/21/2022 | Global Upstream Operations Leader | Cytiva US LLC |
| 07/21/2022 | Project Manager | Pall Corporation |
| 07/22/2022 | Process Engineering Manager | Pall Corporation |
| 07/22/2022 | Senior Project Engineer | Beckman Coulter, Inc. |
| 11/09/2022 | Senior Manager | Beckman Coulter, Inc. |
| 12/19/2022 | Product Manager | Cytiva US LLC |
| 03/01/2023 | Sr. Project Manager | Pall Corporation |

| 03/01/2023 | Global Project Manager | Pall Corporation |
|---|---|---|
| 03/01/2023 | Senior Staff Project Manager | Beckman Coulter, Inc. |
| 03/01/2023 | Senior Staff Project Manager | AB Sciex LLC |
| 03/20/2023 | Senior Manager Solutions Engineering | Danaher Corp. |
| 06/14/2023 | Global Project Manager | Pall Corporation |
| 06/14/2023 | Project Manager | Pall Corporation |
| 08/09/2023 | Senior Manager - Global Sustainability | Pall Corporation |
| 01/31/2024 | Master Scheduler | Beckman Coulter, Inc. |
| 02/05/2024 | Senior Manager | Beckman Coulter, Inc. |
| 02/05/2024 | Senior Project & Portfolio Manager | Beckman Coulter, Inc. |
| 02/15/2024 | SAP Solutions Architect | Pall Corporation |
| 03/27/2024 | Senior Manager - Tech Project Manager | Beckman Coulter, Inc. |
| 07/29/2024 | Director of Product Innovation | Integrated DNA Technologies, Inc. |
| 09/23/2024 | Senior Project Manager | Pall Corporation |
| 10/14/2024 | Senior Program Manager | Beckman Coulter, Inc. |
| 11/08/2024 | Senior Project Manager | Pall Corporation |

100.  Despite meeting the requirements, Plaintiff Critelli was denied the opportunity to interview for nearly every position for which he applied.

101.  When Plaintiff Critelli followed up on his applications, he was repeatedly advised Danaher or the OpCo had decided to "move forward" with other candidates with little or no explanation as to why would not have the opportunity to interview for the position.

102.    Less qualified applicants classified as "underrepresented" received interview opportunities for the positions for which Plaintiff Critelli had applied, and for which Plaintiff Critelli was denied the opportunity to interview.

103.    Discovery will prove that Plaintiff Critelli was denied the opportunity to interview because he is a white man, and therefore not considered underrepresented pursuant to Danaher's DEI Policy.

104.    Discovery will prove that Plaintiff Critelli was denied the opportunity to interview because of his race, white, and because he was not a POC, and therefore not considered underrepresented under Danaher's DEI Policy.

105.    Plaintiff Critelli suffered adverse employment actions because he was denied the opportunity to interview for positions because of his race and sex. That is, Defendants factored race and sex into hiring decision-making.

### *Plaintiff Theodore*

106.    Plaintiff Theodore was employed by Pall Corporation from April 2013 until January 2024 in engineering and manufacturing engineering management positions. Between 2022-2024, he applied for positions for which he was qualified at Pall Corporation, Hach Company and Danaher (corporate) that would have been advancements or promotions.

107.   Less qualified applicants classified as "underrepresented" received interview opportunities for the positions for which Plaintiff Theodore had applied, and for which Plaintiff Theodore was denied the opportunity to interview.

108.   Discovery will prove that Plaintiff Theodore was denied the opportunity to interview because of his race, white, and because he was not a POC, and therefore not considered underrepresented under Danaher's DEI Policy.

109.   Plaintiff Theodore suffered adverse employment actions because he was denied the opportunity to interview because of his sex and race.

### Plaintiff Eggerichs

110.   Plaintiff Eggerichs began working for Pall Corporation in July 2022. While employed, Plaintiff Eggerichs applied for several promotional opportunities for which he was qualified.

111.   Plaintiff Eggerichs was denied promotions for which he was qualified.

112.   Plaintiff lost out on promotional opportunities that were awarded to less qualified women or non-white employees.

113.   Plaintiff Eggerichs suffered adverse employment actions because he was denied the opportunity to interview or denied promotional opportunities because of his race, white, and sex.

### Plaintiff Cunningham

114.    Plaintiff Cunningham has been employed as an Account Manager by Cytiva since April 1, 2019. Plaintiff Cunningham was previously employed in similar capacity by Cytiva's predecessor. In total, Plaintiff Cunningham has approximately 10 years of Account Manager experience.

115.    In September 2023, Plaintiff Cunningham applied for a promotion to the Service Sales Manager – West position. Plaintiff Cunningham satisfied every substantive requirement for the position. However, he was denied the opportunity to interview for the job because he resided on the East coast and therefore did not fulfill the job's residency requirement.

116.    However, the same position was ultimately awarded to a female employee, who, like Plaintiff Cunningham, also resided on the East Coast.

117.    The DEI policy was implemented to favor women and non-white employees and is the reason an exception to the residency requirement was made for a female employee but not for Plaintiff Cunningham.

118.    Plaintiff Cunningham was discriminated against because of his race and sex because the job requirements were different for him as a white man than for a female employee. The purported residency requirement was selectively applied against Plaintiff Cunningham to disqualify him from consideration, but the same residency requirement was waived for a female employee to meet DEI policy objectives.

119.    In April 2025, the Service Sales Manager – West position became available for a second time. Plaintiff Cunningham received a perfunctory interview during which he sensed obvious disinterest in his candidacy. The job was ultimately awarded to a less qualified female applicant.

120.    Twice in two years, Plaintiff Cunningham was denied a promotion to a position that was subsequently awarded to a less qualified female employee.

### *Plaintiff Volek*

121.    Plaintiff Volek is a white man. Plaintiff Volek was subjected to unlawful discrimination based upon his race and sex.

122.    Plaintiff Volek began his employment with Beckman Coulter in 2017.

123.    Plaintiff Volek was employed in the role of Senior Sales Representative.

124.    Plaintiff Volek applied and interviewed for the positions of Regional Sales Manager – East and Distribution Manager.

125.    Despite having over 24 years of experience in the industry, Plaintiff was denied promotional opportunities.

126.    Discovery will prove that Plaintiff Volek was denied the positions because he is a white man, and therefore not considered underrepresented pursuant to Danaher's DEI Policy.

127. Discovery will prove that Plaintiff Volek was denied promotional opportunities because of his race, white, and because he was not a POC, and therefore not considered underrepresented under Danaher's DEI Policy.

128. Plaintiff Volek suffered adverse employment actions because he was denied promotional opportunities because of his race and sex. That is, Danaher factored race and sex into its promotion decision-making.

### *Plaintiff Kumnick*

129. Plaintiff Kumnick is a white man. Plaintiff Kumnick was subjected to unlawful discrimination based upon his race and sex.

130. Plaintiff Kumnick began his employment with Radiometer as a Health Systems Manager in or about March 2022.

131. During the 2023 fiscal year, Plaintiff's director, Mark Clamors, requested that Plaintiff document all his work because Mr. Clamors was pushing Plaintiff to receive a promotion.

132. Despite Plaintiff's performance and his director's efforts to obtain a promotion for him, Plaintiff was not promoted.

133. Plaintiff was led to believe he would receive a promotion in or about April 2024. However, at that time, Plaintiff was informed he was not being considered for the promotion.

134.    Within that same time frame, upon information and belief, because of Danaher's discriminatory DEI policy that disfavored white men, 80% or more of the salespeople who were promoted were women.

135.    Plaintiff was subsequently up for a mid-year promotion consideration. At that time, Mr. Gillespie, Head of Sales for the U.S., under the direction of Tiffany Murphy, Vice President of Radiometer, informed Plaintiff he would not be considered for promotion.

136.    Upon information and belief, less qualified POC and female applicants were given the opportunity to interview for promotional positions, and many of those applicants were ultimately selected over Plaintiff.

137.    Plaintiff Kumnick was discriminated against because Danaher required its OpCos, including Radiometer, to implement a hiring and advancement framework and related DEI policies that favored POC and women but disfavors and discriminates against white male employees.

138.    Despite Plaintiff Kumnick's strong performance, expanded responsibilities, and continued efforts to secure a promotion, he was afforded no meaningful advancement opportunities, which instead were provided to women and POC pursuant to Danaher and Radiometer's DEI policy.

139.    Plaintiff Kumnick suffered adverse employment actions because he was denied promotional opportunities and excluded from consideration for

26

promotion, because Danaher and Radiometer factored race- and sex into their promotion and advancement decisions.

## **RULE 23 CLASS ACTION ALLEGATIONS**

140.   Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) seeking damages, liability phase injunctive and declaratory relief. Plaintiffs reserve the right to amend the definition of the Class based on discovery or legal developments.

141.   Plaintiffs bring this action pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure (FRCP).

142.   Plaintiffs Critelli, Cunningham, and Volek bring this Class Action pursuant to Federal Rule of Civil Procedure 23 on behalf of a proposed "Title VII Class" of similarly situated persons (subject to revision as may be necessary), defined as follows:

> All white men that were employed by Danaher or an OpCo, who during the applicable statute of limitations 1) applied for an internally posted position at Danaher or an OpCo, 2) satisfied the posted job requirements, 3) were not selected for the position, and 4) such posted position was awarded to a woman or person of color.

143.   Plaintiffs Critelli, Theodore and Eggerichs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a proposed "42 U.S.C. 1981 Class" of similarly situated persons (subject to revision as may be necessary), defined as follows:

> All white men that were employed by Danaher or an OpCo, who during the applicable statute of limitations 1) applied for an internally posted position at Danaher or an OpCo, 2) satisfied the posted job requirements, 3) were not selected for the position, and 4) such posted position was awarded to a person of color.

144. Plaintiffs Critelli, Theodore and Eggerichs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a proposed "42 U.S.C. 1981 Pall Subclass" of similarly situated persons (subject to revision as may be necessary), defined as follows:

> All white men that were employed by Pall, Danaher or an Opco who during the applicable statute of limitations 1) applied for an internally posted position at Pall, 2) satisfied the posted job requirements, 3) were not selected for the position, and 4) such position was awarded to a person of color.

145. Plaintiff Critelli brings a subclass pursuant to Federal Rule of Civil Procedure 23 under the Florida Civil Rights Act ("FCRA") on behalf of a proposed "FCRA Pall Class" of similarly situated persons (subject to revision as may be necessary), defined as follows:

> All white men that were employed by Pall, Danaher or an Opco who during the applicable statute of limitations 1) applied for an internally posted position at Pall in Florida, 2) satisfied the posted job requirements, 3) were not selected for the position, and 4) such posted position was awarded to a qualified woman or person of color.

146. Plaintiff Cunningham brings a subclass pursuant to Federal Rule of Civil Procedure 23 under the Massachusetts Fair Employment Practices Act

("MFEPA") on behalf of a proposed "MFEPA Cytiva Class" of similarly situated persons (subject to revision as may be necessary), defined as follows:

> All white men that were employed by Cytiva, Danaher or an OpCp during the applicable statute of limitations 1) applied for an internally posted position at Cytiva in Massachusetts, 2) satisfied the posted job requirements, 3) were not selected for the position, and 4) such posted position was awarded to a woman or person of color.

147. Plaintiff Volek brings a subclass pursuant to Federal Rule of Civil Procedure 23 under the New York State Human Rights Law ("NYSHRL") on behalf of a proposed "NYSHRL Beckman Coulter Class" of similarly situated persons (subject to revision as may be necessary), defined as follows:

> All white men that were employed by Beckman Coulter, Danaher or an OpCo who during the applicable statute of limitations 1) applied for an internally posted position at Beckman Coulter in New York, 2) satisfied the posted job requirements, 3) were not selected for the position, and 4) such posted position was awarded to a woman or person of color.

148. Plaintiff Kumnick brings a subclass pursuant to Federal Rule of Civil Procedure 23 under the California Fair Employment and Housing Act ("FEHA") on behalf of a proposed "FEHA Radiometer Class" of similarly situated persons (subject to revision as may be necessary), defined as follows:

> All white men that were employed by Radiometer, Danaher or an OpCo who during the applicable statute of limitations 1) applied for an internally posted position at Radiometer in California, 2) satisfied the posted job requirements, 3) were not selected for the position, and 4) such posted position was awarded to a woman or person of color.

149.   Plaintiffs have standing to seek the relief sought as stated herein, as Class Representatives are members of the Classes they wish to represent and have been harmed by Danaher's unlawful DEI Policy. The Class Representatives seek to secure relief applicable to themselves and the similarly situated Class members; such relief is properly sought in a class action as much of the necessary relief addresses systemic issues of discriminatory hiring and promotional policies that have harmed all Class members and all those who will become Class Members.

## **Plaintiffs Satisfy Rule 23(A)**

150.   **Numerosity**. The members of the putative classes are so numerous that joinder is practically impossible. Danaher's DEI Policy, which was implemented and executed by the OpCos was enforced with respect to hundreds, if not thousands, of job postings, for which thousands of putative Class Members submitted applications. Based on the number of putative Class Members and their geographic disbursal, joinder is impracticable. The names and addresses of putative Class Members are identifiable through Danaher's records and putative Class Members may be notified of this action by mailed or electronic notice.

151.   **Predominance of Common Questions of Law or Fact**. Class treatment is also appropriate because questions of law or fact common to the putative Classes predominate over any questions affecting only individual members of the putative Classes, and because a class action is superior to other available methods

for the fair and efficient adjudication of this litigation. Such common questions include:

   a.  Whether Defendants have engaged in unlawful systemic discrimination on the basis of race and gender, with respect to hiring and promotions.

   b.  Whether Defendants intentionally diverted hiring and promotional opportunities to women and POC applicants disproportionate to the composition of the applicant pool.

   c.  Whether Defendants intentionally denied hiring and promotional opportunities to white men.

   d.  Whether Defendants' DEI Policy was discriminatory.

   e.  Whether Defendants' DEI Policy established unlawful quotas.

   f.  The appropriate measure of relief and damage to affected Class Members.

152.   Certification of the Named Plaintiffs' claims as a class action is the most efficient and economic means of resolving the questions of law and fact common to Plaintiffs' claims and Class claims. Failure to proceed as a class action would result in an impracticable number of individual suits seeking to resolve the same claims arising from the same policy. Proceeding on an individual basis would further pose an unnecessary risk of inconsistent adjudications. Moreover, individual

Class Members face a high threat of being financially unable or unwilling out of fear of retaliation to seek vindication of their statutory rights through the individual claims.

153.    Named Plaintiffs raise claims typical of the classes they seek to represent and pursue the same factual and legal theories as the classes they seek to represent and seek similar relief.

154.    Danaher's internal records contain sufficient information to identify Class Members.

155.    Danaher has been and continues to be engaged in a pattern and practice of hiring and promotional practices that discriminate against white employees. Danaher's conduct has harmed and affected Named Plaintiffs and Class Members in substantially the same way.

156.    Named Plaintiffs are willing and able to represent the interests of the putative classes they seek to represent and will do so fairly and vigorously. Plaintiffs are prepared to assist in this action and make informed decisions to protect the interests of the putative classes.

157.    Named   Plaintiffs'   counsel   is   experienced   in   employment discrimination matters and class action litigation and will vigorously prosecute this action on behalf of the putative classes. The experience, knowledge, and resources

of Plaintiffs' counsel, together with the assistance of the Named Plaintiffs, satisfy Rule 23's adequacy requirements.

158.   Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Danaher has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The Class Members are entitled to injunctive relief to end Danaher's common, uniform, unfair and discriminatory policies and practices.

159.   Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Class Members have been damaged and are entitled to recovery as a result of Danaher's common, uniform, unfair and discriminatory policies and practices. Defendants have computerized account data, payroll data, and personnel data that will make the calculation of damages for specific Class Members relatively simple. The propriety and number of punitive damages are based on Danaher's conduct, making these issues common to the putative Classes.

160.    Danaher has acted on grounds generally applicable to the putative classes and appropriate injunctive and declaratory relief would apply to and benefit the putative Classes as a whole.

## ALLEGATION REGARDING INJUNCTIVE RELIEF

161.    Named Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief they seek in this action is the only means of securing complete and adequate relief. Named Plaintiffs, and the Classes they seek to represent are now suffering, will continue to suffer, irreparable injury from Danaher's discriminatory conduct.

162.    Defendants' actions have caused and continue to cause Plaintiff and all Class Members substantial losses in earnings and other employment benefits.

163.    In addition, Plaintiffs and Class Members suffer and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

164.    Defendants performed the acts herein alleged with malice or reckless indifference. Plaintiffs and Class Members are thus entitled to recover punitive damages in an amount according to proof.

## Count I
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
### (Sex and Race Discrimination)

165.    Plaintiffs Critelli, Cunningham and Volek repeat and realleges the allegations set forth in Paragraphs 36-164 as though fully set forth herein.

166.    Defendants' conduct, as alleged herein, violated Title VII, which prohibits discrimination on the basis of sex and race.

167.    Defendants discriminated against Plaintiffs Critelli, Cunningham and Volek on the basis of gender, male, and race, white.

168.    Defendants have engaged in an intentional, company-wide and systematic policy, pattern, and/or practice of discrimination against its white male employees. Danaher has intentionally discriminated against Plaintiffs Critelli, Cunningham and Volek and the Class in violation of Title VII by, among other things:

    a.  Implementing a DEI Policy that favored certain applicants and candidates because of their gender and race, over other applicants and candidates who were of a different sex, male, or race, white.

    b.  Using race as a consideration in hiring and promotion decisions.

    c.  Using sex as a consideration in hiring and promotion decisions.

169.    Defendants' unlawful employment practices were intentional and done with malice and reckless indifference to Plaintiffs Critelli, Cunningham and Volek's federally protected rights.

170.    As a direct result of Defendants' discriminatory actions, Plaintiffs Critelli, Cunningham and Volek have suffered damages including lost wages, non-monetary damages and attorney's fees.

**WHEREFORE**, Plaintiffs Critelli, Cunningham and Volek seek relief as follows:

a.    Certification of the putative Title VII Class.

b.    Designation of Plaintiffs Critelli, Cunningham and Volek's counsel as representatives of the Class.

c.    Designation of Plaintiffs Critelli, Cunningham and Volek's of record as Class Counsel.

d.    A declaratory judgment that the practices complained about herein are unlawful and violate Title VII;

e.    A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns and/or practices that discriminate against Plaintiffs Critelli, Cunningham and Volek or the Class because of race, sex or participation in this lawsuit;

f.    An order that Defendants institute and carry out policies, practices, and programs that provide equal employment opportunities for all

36

employees regardless of race or sex, and that they eradicate the effects of their past and present unlawful employment practices;

g. An order requiring Defendants to develop and institute accurate and validated standards for evaluating performance, assigning opportunities, and determining compensation;

h. An order retaining jurisdiction over this action to ensure that Defendants comply with such a decree;

i. An order restoring Plaintiffs and Class Members to their rightful positions at Defendants, or in lieu of reinstatements, an order for front pay benefits;

j. Back pay (including interest and benefits) for the Plaintiffs and Class Members;

k. All damages sustained as a result of Defendants' conduct including damages for emotional distress according to proof;

l. Exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

m. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

n. Pre-judgment and post-judgment interest, as provided by law; and

o. Such other and further legal and equitable relief as this Court deems

necessary, just, and proper.

## Count II
### Violation of 42 U.S.C. § 1981a
### (Race Discrimination)

171.    Named Plaintiffs repeat and reallege the allegations set forth in

Paragraphs 36-164 as though fully set forth herein.

172.    Defendants' conduct, as alleged herein, violated 42 U.S.C. § 1981,

which prohibits discrimination on the basis of race.

173.    Named Plaintiffs are white and therefore members of a protected class.

174.    Defendants denied Named Plaintiffs employment opportunities based

on their race in violation of 42 U.S.C. § 1981.

175.    Similarly situated employees that were not white received preferential

treatment when applying for internal positions.

176.    Defendants engaged in an intentional, company-wide and systematic

policy, pattern, and/or practice of discrimination against its white employees and

applicants. Defendant has intentionally discriminated against Plaintiff and the Class

in violation of 42 U.S.C. § 1981 by, among other things:

a. Implementing a DEI Policy that favored certain applicants and

candidates because of their race, over other applicants and candidates

who were white;

38

b.  Using race as a consideration in hiring decisions;

177.  As a direct result of Defendants' discriminatory actions, Named Plaintiffs suffered damages including lost wages, non-monetary damages and attorney's fees.

**WHEREFORE**, Named Plaintiffs seek relief as follows:

a.  Certification of the putative § 1981 Class and Subclass;

b.  Designation of Named Plaintiffs as representatives of the Class and Subclass;

c.  Designation of Named Plaintiffs' counsel of record as Class Counsel;

d.  A declaratory judgment that the practice the practices complained of herein are unlawful and violate 42 U.S.C. §§ 2000e, *et seq.;*

e.  A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns and/or practices that discriminate against Named Plaintiffs or the Class because of race or participation in this lawsuit;

f.  An order that Defendants institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of race; and that they eradicate the effects of their past and present unlawful employment practices;

g. An order requiring Defendants to develop and institute accurate and validated standards for evaluating performance, assigning opportunities, and determining compensation;

h. An order retaining jurisdiction over this action to ensure that Defendant complies with such a decree;

i. An order restoring Plaintiffs and Class Members to their rightful positions at Defendants, or in lieu of reinstatements, an order for front pay benefits;

j. Back pay (including interest and benefits) for the Plaintiffs and Class Members;

k. All damages sustained as a result of Defendants' conduct including damages for emotional distress according to proof;

l. Monetary damages arising from Defendants' discriminatory conduct;

m. Exemplary and punitive damages in an amount commensurate with Defendants' ability to pay and to deter future conduct;

n. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

o. Pre-judgment and post-judgment interest, as provided by law; and

p. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## Count III

**Violation of Massachusetts Fair Employment Practices Act, M.G.L. c. 151B (Sex and Race Discrimination)**

178.    Plaintiff Cunningham repeats and re-alleges the allegations set forth in Paragraphs 41-94; 114-120 as though fully set forth herein.

179.    Cytiva's conduct, as alleged herein, violated the MFEP, which prohibits discrimination on the basis of sex and race.

180.    Cytiva discriminated against Plaintiff Cunningham on the basis of his gender, male, and race, white.

181.    Cytiva has engaged in an intentional, company-wide and systematic policy, pattern, and/or practice of discrimination against its white male employees. Cytiva has intentionally discriminated against Plaintiff Cunningham and the Class in violation of MFEP by, among other things:

    a. Implementing a DEI Policy that favored certain applicants and candidates because of their gender and race, over other applicants and candidates who were of a different sex, male, or race, white.

    b. Using race as a consideration in hiring and promotion decisions;

    c. Using sex as a consideration in hiring and promotion decisions;

182.    Cytiva's unlawful employment practices were intentional and done with malice and reckless indifference to Plaintiff Cunningham's state protected rights.

41

183.   As a direct result of Cytiva's discriminatory actions, Plaintiff Cunningham has suffered damages including lost wages, non-monetary damages and attorney's fees.

**WHEREFORE**, Plaintiff Cunningham seeks relief as follows:

a.   Certification of the putative MFEP Class;

b.   Designation of Plaintiff Cunningham as representative of the Class;

c.   Designation of Plaintiff Cunningham's counsel of record as Class Counsel;

d.   A declaratory judgment that the practices complained of herein are unlawful and violate MFEP;

e.   A preliminary and permanent injunction against Cytiva and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns and/or practices that discriminate against Plaintiff Cunningham or the Class because of race, sex or participation in this lawsuit;

f.   An order that Cytiva institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of race or sex, and that they eradicate the effects of their past and present unlawful employment practices;

g.  An order requiring Cytiva to develop and institute accurate and validated standards for evaluating performance, assigning opportunities, and determining compensation;

h.  An order retaining jurisdiction over this action to ensure that Cytiva complies with such a decree;

i.  An order restoring Plaintiff Cunningham and Class Members to their rightful positions at Cytiva, or in lieu of reinstatements, an order for front pay benefits;

j.  Back pay (including interest and benefits) for the Plaintiff and Class Members;

k.  All damages sustained as a result of Cytiva conduct including damages for emotional distress according to proof;

l.  Exemplary and punitive damages in an amount commensurate with Cytiva's ability to pay and to deter future conduct;

m.  Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

n.  Pre-judgment and post-judgment interest, as provided by law; and

o.  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**Count IV**

**Violation of Florida Civil Rights Act, Ch. 760.01, *et seq*.**
**(Sex and Race Discrimination)**

184.    Plaintiff Critelli repeats and realleges the allegations set forth in Paragraphs 41-105 as though fully set forth herein.

185.    Pall's conduct, as alleged herein, violated the FCRA, which prohibits discrimination on the basis of sex and race.

186.    Pall discriminated against Plaintiff Critelli on the basis of his gender, male, and race, white.

187.    Pall has engaged in an intentional, company-wide and systematic policy, pattern, and/or practice of discrimination against its white male employees. Pall has intentionally discriminated against Plaintiff Critelli and the Class in violation of the FCRA by, among other things:

    a.    Implementing a DEI Policy that favored certain applicants and candidates because of their gender and race, over other applicants and candidates who were of a different sex, male, or race, white.

    b.    Using race as a consideration in hiring and promotion decisions;

    c.    Using sex as a consideration in hiring and promotion decisions;

188.    Pall's unlawful employment practices were intentional and done with malice and reckless indifference to Plaintiff Critelli's state protected rights.

189.    As a direct result of Pall's discriminatory actions, Plaintiff Critelli has suffered damages including lost wages, non-monetary damages and attorney's fees.

**WHEREFORE**, Plaintiff Critelli seeks relief as follows:

a.  Certification of the putative FCRA Class;

b.  Designation of Plaintiff Critelli as representatives of the Class;

c.  Designation of Plaintiff Critelli's counsel of record as Class Counsel;

d.  A declaratory judgment that the practices complained of herein are unlawful and violate the FCRA;

e.  A preliminary and permanent injunction against Pall and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns and/or practices that discriminate against Plaintiff Critelli or the Class because of race, sex or participation in this lawsuit;

f.  An order that Pall institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of race or sex, and that they eradicate the effects of their past and present unlawful employment practices;

g.  An order requiring Pall to develop and institute accurate and validated standards for evaluating performance, assigning opportunities, and determining compensation;

h.  An order retaining jurisdiction over this action to ensure that Pall complies with such a decree;

i.  An order restoring Plaintiff and Class Members to their rightful positions at Pall, or in lieu of reinstatements, an order for front pay benefits;

j.  Back pay (including interest and benefits) for the Plaintiff and Class Members;

k.  All damages sustained as a result of Pall's conduct including damages for emotional distress according to proof;

l.  Exemplary and punitive damages in an amount commensurate with Pall's ability to pay and to deter future conduct;

m. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

n.  Pre-judgment and post-judgment interest, as provided by law; and

o.  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **Count V**

**Violation of New York State Human Rights Law, Article 15 §§ 290-301
(Sex and Race Discrimination)**

190.   Plaintiff Volek repeats and realleges the allegations set forth in Paragraphs 41-94; 121-128 as though fully set forth herein.

191.   Beckman Coulter's conduct, as alleged herein, violated the NYSHRL, which prohibits discrimination on the basis of sex and race.

46

192.    Beckman Coulter discriminated against Plaintiff Volek on the basis of his gender, male, and race, white.

193.    Beckman Coulter has engaged in an intentional, company-wide and systematic policy, pattern, and/or practice of discrimination against its white male employees. Beckman Coulter has intentionally discriminated against Plaintiff Volek and the Class in violation of the NYSHRL by, among other things:

   a.  Implementing a DEI Policy that favored certain applicants and candidates because of their gender and race, over other applicants and candidates who were of a different sex, male, or race, white.

   b.  Using race as a consideration in hiring and promotion decisions;

   c.  Using sex as a consideration in hiring and promotion decisions;

194.    Beckman Coulter's unlawful employment practices were intentional and done with malice and reckless indifference to Plaintiff Volek's state protected rights.

195.    As a direct result of Beckman Coulter's discriminatory actions, Plaintiff Volek has suffered damages including lost wages, non-monetary damages and attorney's fees.

   **WHEREFORE**, Plaintiff Volek seeks relief as follows:

   a.  Certification of the putative NYSHRL Class;

   b.  Designation of Plaintiff Volek as representatives of the Class;

c.  Designation of Plaintiff Volek's counsel of record as Class Counsel;

d.  A declaratory judgment that the practices complained of herein are unlawful and violate the NYSHRL;

e.  A preliminary and permanent injunction against Beckman Coulter and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns and/or practices that discriminate against Plaintiff Volek or the Class because of race, sex or participation in this lawsuit;

f.  An order that Beckman Coulter institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of race or sex, and that they eradicate the effects of their past and present unlawful employment practices;

g.  An order requiring Beckman Coulter to develop and institute accurate and validated standards for evaluating performance, assigning opportunities, and determining compensation;

h.  An order retaining jurisdiction over this action to ensure that Beckman Coulter complies with such a decree;

i.  An order restoring Plaintiffs and Class Members to their rightful positions at Beckman Coulter, or in lieu of reinstatements, an order for front pay benefits;

j.  Back pay (including interest and benefits) for the Plaintiffs and Class Members;

k.  All damages sustained as a result of Beckman Coulter's conduct including damages for emotional distress according to proof;

l.  Exemplary and punitive damages in an amount commensurate with Beckman Coulter's ability to pay and to deter future conduct;

m. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

n.  Pre-judgment and post-judgment interest, as provided by law; and

o.  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## <u>Count V</u>
### Violation of California Fair Employment and Housing Act
### (Sex and Race Discrimination)

196.  Plaintiff Kumnick repeats and realleges the allegations set forth in Paragraphs 41-94; 129-139 as though fully set forth herein.

197.  Radiometer's conduct, as alleged herein, violated the FEHA, which prohibits discrimination on the basis of sex and race.

198.  Radiometer discriminated against Plaintiff Kumnick on the basis of his gender, male, and race, white.

199.    Radiometer has engaged in an intentional, company-wide and systematic policy, pattern, and/or practice of discrimination against its white male employees. Radiometer has intentionally discriminated against Plaintiff Kumnick and the Class in violation of the FEHA by, among other things:

    d.    Implementing a DEI Policy that favored certain applicants and candidates because of their gender and race, over other applicants and candidates who were of a different sex, male, or race, white.

    e.    Using race as a consideration in hiring and promotion decisions;

    f.    Using sex as a consideration in hiring and promotion decisions;

200.    Radiometer's unlawful employment practices were intentional and done with malice and reckless indifference to Plaintiff Kumnick's state protected rights.

201.    As a direct result of Radiometer's discriminatory actions, Plaintiff Kumnick has suffered damages including lost wages, non-monetary damages and attorney's fees.

**WHEREFORE**, Plaintiff Kumnick seeks relief as follows:

    a.    Certification of the putative FEHA Class;

    b.    Designation of Plaintiff Kumnick as representatives of the Class;

    c.    Designation of Plaintiff Kumnick's counsel of record as Class Counsel;

d.  A declaratory judgment that the practices complained of herein are unlawful and violate the FEHA;

e.  A preliminary and permanent injunction against Radiometer and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns and/or practices that discriminate against Plaintiff Kumnick or the Class because of race, sex or participation in this lawsuit;

f.  An order that Radiometer institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of race or sex, and that they eradicate the effects of their past and present unlawful employment practices;

g.  An order requiring Radiometer to develop and institute accurate and validated standards for evaluating performance, assigning opportunities, and determining compensation;

h.  An order retaining jurisdiction over this action to ensure that Radiometer complies with such a decree;

i.  An order restoring Plaintiffs and Class Members to their rightful positions at Radiometer, or in lieu of reinstatements, an order for front pay benefits;

j. Back pay (including interest and benefits) for the Plaintiffs and Class Members;

k. All damages sustained as a result of Radiometer's conduct including damages for emotional distress according to proof;

l. Exemplary and punitive damages in an amount commensurate with Radiometer's ability to pay and to deter future conduct;

m. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

n. Pre-judgment and post-judgment interest, as provided by law; and

o. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiffs and putative Class Members hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: February 19, 2026

/s/ *Marc R. Edelman*
MARC R. EDELMAN, ESQ.
Florida Bar No.: 0096342
MORGAN & MORGAN, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813-223-5505
Facsimile: 813-257-0572

medelman@forthepeople.com

/s/ *Gregory R. Schmitz*
GREGORY R. SCHMITZ, ESQ.
Florida Bar No.: 0094694
Morgan & Morgan, P.A.
20 North Orange Avenue, 15th Floor
Orlando, Florida 32801
Telephone: 407-204-2170
Facsimile:  407-245-3401
gschmitz@forthepeople.com


/s/ *Sophia L. Walker*
SOPHIA L. WALKER, ESQ.
Florida Bar No.: 1068754
MORGAN & MORGAN, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813-424-5603
Facsimile: 813-329-6944
sophia.walker@forthepeople.com