# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JAMES CRITELLI, RYAN
THEODORE, TAYLOR EGGERICHS,
RAY CUNNINGHAM, ERIK VOLEK,
ANDREW KUMNICK, and all other
similarly situated,

        Plaintiffs,

    v.

DANAHER CORPORATION, PALL
CORPORATION, BECKMAN
COULTER, INC., GLOBAL LIFE
SCIENCES SOLUTIONS USA LLC
d/b/a CYTIVA, RADIOMETER
AMERICA, INC.

        Defendants.

Case No: 6:25-cv-1780-AGM-LHP

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT WITH MEMORANDUM OF LAW IN SUPPORT

Defendants Pall Corporation ("Pall"), Beckman Coulter, Inc. ("Beckman Coulter"), Global Life Sciences Solutions USA LLC d/b/a Cytiva ("Cytiva"), Radiometer America, Inc. ("Radiometer"), and improperly named Danaher Corporation ("Danaher"), pursuant to Fed. R. Civ. P. 12(b)(6), file this Motion to Dismiss. The Court should dismiss Plaintiffs' Amended Complaint for failure to state a claim.

## INTRODUCTION

Defendants' Motion should be granted and this matter dismissed because Plaintiffs have failed to support their sprawling nationwide discrimination class claims with even the basic facts and legal elements necessary to support them.

Plaintiffs Critelli, Theodore, and Eggerichs are former Pall employees. Plaintiff Volek is a former Beckman Coulter employee. Plaintiff Kumnick is a former Radiometer employee. Plaintiff Cunningham is a current Cytiva employee. Danaher is an entirely separate entity and employer at which Plaintiffs never were employed or worked. Yet, Plaintiffs ask this Court to certify seven nationwide classes of thousands of employees over the past several years at each of these different entities and employers—as well as at nearly 15 other different entities and employers that are distinct from Defendants—all of whose claims can be adjudicated only through highly individualized inquiries. Plaintiffs attempt to justify their overreaching Amended Complaint with a thin series of conclusory allegations that fail to support their individual claims—let alone sustain this matter as a nationwide class action.

Plaintiffs assert failure to promote (or "failure to interview") claims based on their race (white) and/or gender (male). Plaintiffs allege race discrimination in violation of 42 U.S.C. § 1981 ("§ 1981"). Critelli, Cunningham, Volek, and Kumnick also allege sex and race discrimination in violation of Title VII of the Civil Rights Act ("Title VII") and, respectively, the Florida Civil Rights Act ("FCRA"), Massachusetts Fair Employment Practices Act ("MFEPA"), New York State Human Rights Law ("NYSHRL"), and California Fair Employment and Housing Act ("FEPA"). Plaintiffs allege that a "'Diversity, Equity and Inclusion Policy ('DEI Policy')'" discriminates against white men by excluding them from promotion opportunities that women and people of color ("POC") receive instead. (Am. Complt., p. 1, ¶ 12.) Plaintiffs claim that aspirational efforts to broaden the range of talent pools and maximize the chances of hiring the most qualified candidate, irrespective of sex or race, constituted sex and race discrimination. Plaintiffs purposely distort those aspirational recruiting efforts to claim, without any support, that this alleged policy "establishes functional quotas in promotions[,] is the source of systemic discrimination against white men," and gave "preferential consideration for women and POC." (*See id.*, p. 1, ¶ 59.) These conclusory allegations do not establish that any such policy existed, and Plaintiffs do not attach a copy of any such alleged policy to their Amended Complaint. Indeed, the documents to which they refer actually contradict many of Plaintiffs' allegations.

Contrary to Plaintiffs' speculation, they must concede these documents do *not* establish quotas, do *not* state that women and POC will receive preferential treatment, and do *not* state that any promotion decisions will be made on the basis of gender or race. The suggestions to the contrary are simply make-believe. Instead, the Form 10-K Plaintiffs cite states: "We seek to continuously improve and sustain a diverse, equitable and inclusive culture free of systemic bias and where all associates feel they belong." (Exhibit A.)[1] That is a statement of equal employment opportunity. Contrary to Plaintiffs' assertions that "white men were disproportionately excluded from the interview pool," another document references "the goal to have 50% underrepresented candidates interviewed . . . to broaden candidate pools" (rather than exclude anyone from them) "and maximize the chances of hiring the most qualified candidate of every gender, race, and ethnicity." (Am. Complt., ¶¶ 62, 64.) Again, this is a statement of equal opportunity and does not refer in any way to quotas or preferential treatment.[2]

Ultimately, Plaintiffs' Amended Complaint is fatally flawed.

First, under Title VII, Cunningham, Volek, and Kumnick fail to exhaust their administrative remedies because they have not received notice of their right

---

[1] The Court may consider this document without converting this Motion into a motion for summary judgment because the document is incorporated into the Amended Complaint. (*See* Am. Complt., ¶ 54); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

[2] Plaintiffs argue that a public report from 2024 "contained a POC quota, touting 'POC represent 38% of U.S. workforce by 2025.'" (*Id.*, ¶¶ 88, 90.) The problem for Plaintiffs is that the document cited does not actually say this is a quota, nor does it refer to promotions. In fact, the Amended Complaint undercuts Plaintiffs' argument by citing similar language in another document stating that it is a "GOAL[.]" (*Id.*, ¶ 93 (emphasis original).)

to sue from the U.S. Equal Employment Opportunity Commission ("EEOC"). Accordingly, their Title VII claims must be dismissed at the outset.

Second, most of Critelli, Cunningham, and Kumnick's claims under Title VII, the FCRA, and the MFEPA must be dismissed because they are time-barred.

Third, all Plaintiffs' individual claims should be dismissed because Plaintiffs have not pled facts to render their claims plausible. Plaintiffs overwhelmingly do not identify the specific positions for which they did not receive promotions (or interviews), the job requirements for these positions, their own qualifications, facts suggesting less qualified POC women actually filled any such positions, or other facts to plausibly suggest that the reason they did not receive these opportunities was due to discrimination.

Fourth, Plaintiffs' class allegations should be dismissed because they have failed to allege even the most basic requirements of Fed. R. Civ. P. 23.

Finally, Plaintiffs cannot maintain their claims against Danaher because they fail to allege facts showing Danaher employed any of them in any capacity. Each Plaintiff worked solely for a distinct company that exercised its own independent authority over hiring, management, and retention decisions. Plaintiffs plead no facts suggesting that Danaher controlled those employment decisions. Their claims against Danaher should be dismissed on this basis.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Eleventh Circuit requires that discrimination complaints in particular "must" satisfy the pleading standard set forth in *Twombly* and *Iqbal*. *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011).

**ARGUMENT**

## I.    Cunningham, Volek, And Kumnick Have Not Exhausted Their Title VII Claims.

Title VII required Cunningham, Volek, and Kumnick to exhaust their administrative remedies before commencing suit. *See* 42 U.S.C. § 2000e-5. They must file EEOC Charges of Discrimination ("Charges") and receive notice from the EEOC of their right to sue before filing their Title VII claims. *See Burnett v. City of Jack., FL*, 376 F. App'x 905, 906-07 (11th Cir. 2010) (affirming dismissal of Title VII complaint because it did not allege that plaintiff was issued right-to-sue letter before filing lawsuit).

The Amended Complaint contains no allegations that Cunningham, Volek, and Kumnick received notice of their right to sue from the EEOC. Since they have failed to exhaust their Title VII administrative remedies, their Title VII claims must be dismissed. *See Williams v. Datz Rest.*, No. 8:23-cv-1264-WFJ-TGW, 2023 WL 4359108, at *1-2 (M.D. Fla. June 9, 2023) (dismissing Title VII claims because plaintiff did not "claim that she received a right-to-sue letter before

5

bringing [her] lawsuit"). These Plaintiffs knew their claims were not yet ripe for suit, but they filed these claims anyway, wasting the parties' and this Court's resources.[3]

## II. Most Of Critelli, Cunningham, And Kumnick's Claims Are Time-Barred Under Title VII, The MFEPA, And The FCRA.

Under Title VII and the MFEPA, plaintiffs must file an administrative charge within 300 days of the alleged discrimination. *See* 42 U.S.C. § 2000e-5(e)(1); *Salomon v. Mass. Hous. Fin. Agency*, No. 22-cv-10181-ADB, 2023 WL 2588334, at *7 (D. Mass. Mar. 21, 2023). "Similarly, a plaintiff suing under the [FCRA] must file a charge with the EEOC no more than 365 days after the last discriminatory act." *Guang Chen v. Sarasota Cnty. Sch. Bd.*, No. 8:18-cv-2458-T-23AAS, 2019 WL 1003067, at *2 (M.D. Fla. Mar. 1, 2019). Here, Critelli, Cunningham, and Kumnick filed their Charges on January 22, October 23, and November 3, 2025, respectively. (Am. Complt., ¶¶ 44, 47, 49.) Accordingly, the following claims are time-barred: Critelli's Title VII claims to the extent they concern conduct dating before March 28, 2024 (*i.e.*, 300 days before January 22, 2025); Critelli's FCRA claims to the extent they concern conduct dating before January 23, 2024 (*i.e.*, 365 days before January 22, 2025); Cunningham's Title VII and MFEPA claims to the extent they concern conduct dating before December 27, 2024 (*i.e.*, 300 days before October 23, 2025); and Kumnick's Title

---

[3] Flouting their duty to exhaust administrative remedies is also improper under the Federal Rules of Civil Procedure. *See Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1307, 1315-16, 1318 (11th Cir. 2021) (affirming Rule 11 sanctions against plaintiff for filing claims he knew "to be objectively frivolous since he had not exhausted his administrative remedies").

VII claims to the extent they concern conduct dating before January 7, 2025 (*i.e.*, 300 days before November 3, 2025). (*See id.*, ¶¶ 99-100 (Critelli's potential claims going back to 2021), 115-18 (Cunningham's 2023 claim), 131-38 (Kumnick's 2023 and 2024 claims).) Plaintiffs' time-barred claims must be dismissed. *See Yelverton v. Univ. Athletic Ass'n*, No. 1:20cv274-MW/GRJ, 2021 WL 11680427, at *1 (N.D. Fla. July 19, 2021) (granting motion to dismiss time-barred failure to promote claims with prejudice).[4]

## III. Plaintiffs Fail To Sufficiently Plead Plausible Individual Claims.

The Amended Complaint fails to state facts plausibly suggesting discrimination. Instead, Plaintiffs merely speculate that they did not receive promotions or interviews because of their sex and/or race. Most Plaintiffs, but not all of them, suggest that they were qualified for positions they applied for, but allege that "less qualified" applicants or employees received opportunities instead. But Plaintiffs do so in a cursory, conclusory manner—without pleading facts to support even a minimal inference of discriminatory intent. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (holding that plaintiffs' claims merely alleging they were "denied promotions . . . and treated differently" than others similarly situated because of race "epitomizes speculation

---

[4] Volek and Eggerichs decline to allege any sense of when they were discriminated against during their employment. Therefore, although the untimeliness of their claims is not apparent from their pleading, their claims still should be dismissed as deficient at the pleading stage for this reason. *See Albu v. TBI Airport Mgmt.*, 1:15-cv-3120-WSD, 2016 WL 6246732, at *4 (N.D. Ga. Oct. 26, 2016) (granting motion to dismiss failure to promote claim because plaintiff did not allege when he applied); *see also Childress v. Birmingham Airport Auth.*, No. 2:19-cv-196-TMP, 2019 WL 13268172, at *1-2 (N.D. Ala. Feb. 8, 2019) (ruling that plaintiff alleging failure to promote claim "must allege **when** the actions about which she complains took place").

and therefore does not amount to a short and plain statement of their claim under Rule 8(a)"). If speculation were enough to support civil rights litigation—especially those brought as class actions—courts would be inundated with baseless and burdensome matters like this case.

Courts routinely dismiss claims where the plaintiff fails to adequately plead that he was not promoted or hired because of his protected class.[5] Here, most Plaintiffs do not even identify the specific positions at issue. Instead, Critelli provides a list of positions he applied for and alleges that he "suffered adverse employment actions because he was denied the opportunity to interview . . . for *nearly* every position for which he applied." (Am. Complt., ¶¶ 99-100, 105 (emphasis added).) In other words, Critelli purports to assert claims based on a "failure to interview" theory, but only for *some* of the positions he lists, without specifying which ones. Worse, Theodore, Eggerichs, and Kumnick simply refer to "positions," "advancements," "promotions," and/or "promotional opportunities" generically. (*Id.*, ¶¶ 106, 110, 133, 139.) Critelli, Theodore, Eggerichs, and Kumnick's claims must be dismissed for this reason alone. *See Gray v. Bd. of Trs.*

---

[5] Claims under the FCRA, MFEPA, NYSHRL, and FEHA are analyzed under the same framework as Title VII claims, which, in turn, are usually analyzed under the same framework as § 1981 claims. *See Butler v. Dassault Systemes Americas Corp.*, No: 6:24-cv-2324-JSS-NWH, 2025 WL 2299377, at *2 (M.D. Fla. Aug. 8, 2025) ("[D]iscrimination claims under Title VII and the FCRA are analyzed under the same framework."); *Shah v. Orange Park Med. Ctr., Inc.*, No. 3:14-cv-1081, 2016 WL 4943925, at *4 (M.D. Fla. Sept. 16, 2016) (discussing Title VII and § 1981 claims together); *Farzinpour v. Berklee Coll. of Music*, 616 F. Supp. 3d 98, 113 (D. Mass. 2022) (noting court applies same framework in Title VII and Chapter 151B cases); *Burcham v. City of L.A.*, 562 F. Supp. 3d 694, 708 n.5 (C.D. Cal. 2022) ("Courts analyze Title VII and FEHA claims identically."); *Offor v. Mercy Med. Ctr.*, 167 F. Supp. 3d 414, 429 (E.D.N.Y. 2016) (considering Title VII, § 1981, and NYSHRL claims together), *aff'd and vacated on other grounds*, 676 F. App'x 51 (2d Cir. 2017).

*of Ga. Mil. Coll.*, No. 5:21-cv-52 (MTT), 2022 WL 683128, at *10-11 (M.D. Ga. Mar. 7, 2022) (dismissing "unspecified failure-to-promote claims" under 12(b)(6) because claim "alleging failure to promote must identify which position the plaintiff applied for and was rejected"); *Suarez v. Padron*, No. 18-23930-CIV-MARTINEZ/LOUIS, 2019 WL 13256087, at *5 (S.D. Fla. Jan. 29) ("Critically, the Complaint fails to state what position Plaintiff applied to; without this fact, it is impossible for the Defendant—or the Court—to assess his allegation that he was qualified for the job."), *report and recommendation adopted*, 2019 WL 13256091, at *2 (S.D. Fla. Feb. 28, 2019) (granting motion to dismiss because plaintiff's complaint did not "include a description of the position he applied for"); *see also Glover v. Dist. Bd. of Tr. of Palm Beach State Coll.*, No. 9:19-CV-80968-ROSENBERG/REINHART, 2019 WL 6340087, at *2-3 (S.D. Fla. Nov. 27, 2019) (ruling that comparable Title VI pleading was deficient when it was unclear which positions it listed were at issue).[6]

Plaintiffs' claims that they were qualified are pled in wholly "conclusory fashion." *See Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 803, 808, 811 (11th Cir. 2015) (affirming dismissal under 12(b)(6) when plaintiff "failed to provide sufficient factual matter to show he was qualified for the position" as "he

---

[6] Unlike all other Plaintiffs, Kumnick does not allege that he actually applied for a position. This is also fatal to his claims. *See Gonzalez-Barreto v. Fla. Dep't of Child. & Families*, No. 8:18-cv-3024-T-23JSS, 2020 WL 3128863, at *3 (M.D. Fla. June 12, 2020) (granting motion to dismiss failure to promote claim because plaintiff alleged "no facts showing that he applied for the position"); *Harris v. Dep't of Child. & Families, Off. of Inspector Gen.*, No. 19-62842-CV-SMITH, 2020 WL 13221243, at *2-3 (S.D. Fla. May 18, 2020) (same).

did not allege the specific qualifications necessary . . . or that he had fulfilled them").[7] Without more, Plaintiffs' allegations that they were qualified do not plead a claim. *See Shah*, 2016 WL 4943925, at *5, *12 (granting motion to dismiss when plaintiff maintained he was "well-qualified" but did not "allege that he met the qualifications necessary to hold these positions" or "provide any non-conclusory allegations demonstrating that he was qualified for the committee or leadership roles he sought"); *Parnell v. Fla. Dep't of Corrs.*, No. 23-24008-CIV-MORENO, 2024 WL 3251569, at *1, *5-6 (S.D. Fla. July 1, 2024) ("mere conclusory statement that [plaintiff] 'met or exceeded all of the qualifications required for promotion to this position' without saying what those qualifications were" did not survive motion to dismiss); *Suarez*, 2019 WL 13256091, at *2 (ruling that statement that plaintiff was "qualified to fill" position was conclusory and that dismissal was appropriate since he did not include "information as to why he was qualified for said position").[8]

---

[7] Volek does not allege – even conclusorily – that he was qualified for the "positions of Regional Sales Manager – East and Distribution Manager." (Am. Complt., ¶ 124.) He pleads that he "was denied promotional opportunities" despite "having over 24 years of experience in the industry," but does not allege that "24 years of experience" was a requirement "for the positions of Regional Sales Manager – East and Distribution Manager." (*Id.*, ¶¶ 124-25.) Likewise, Kumnick relies solely upon his "strong performance" and "expanded responsibilities" as a Health Systems Manager. (*Id.*, ¶¶ 130, 138.) But he does not allege that Radiometer identified these factors as qualifications or requirements for the alleged position he was denied. (Indeed, he does not even allege that he applied for a specific position.)

[8] Cunningham admits he lacked qualifications for the promotions he sought. He pleads that he was denied an interview for the Service Sales Manager – West position "because he resided on the East coast and therefore did not fulfill the job's residency requirement." (Am. Complt., ¶ 115); *see Pouyeh v. Univ. of Ala./Dep't of Ophthamology*, No. CV-12-BE-4198-S, 2014 WL 2740314, at *1, *5 (N.D. Ala. June 16, 2014) (granting motion to dismiss because, while plaintiff pled he was qualified for position, his pleading established instead that he did not meet basic requirement), *aff'd, Pouyeh v. UAB Dep't of Ophthamology*, 625 F. App'x 495, 496-97 (11th Cir.

Plaintiffs' failure to allege for most of the positions that Defendants selected anyone outside their (applicable) protected classes is another fatal flaw. *See Hooker v. Wilkie*, No. 8:18-cv-2000-T-36JSS, 2020 WL 335805, at \*6, \*12 (M.D. Fla. Jan. 21, 2020) (granting motion to dismiss when complaint did not allege plausible facts that position was filled with person outside protected class or at all); *Showers v. City of Bartow*, 978 F. Supp. 1464, 1468 (M.D. Fla. 1997) (granting motion to dismiss because complaint did "not state whether or not a non-protected person ultimately filled the position [plaintiff] was seeking"); *Suarez*, 2019 WL 13256087, at \*5 (finding dismissal warranted because plaintiff failed to allege that position was filled by person outside protected class).

Absent from the Amended Complaint is an allegation that anyone outside of Critelli, Theodore and Volek's protected classes received the positions to which they applied.[9] Eggerichs may argue that, for some applications, he alleged that he "lost out on promotional opportunities that were awarded to less qualified women <u>or</u> non-white employees." (Am. Complt., ¶¶ 110-13 (emphasis added).)

_____

2015) (noting that most plausible explanation plaintiff did not receive position was non-discriminatory reason "provided in the complaint itself").

[9] To deflect from this glaring deficiency, Critelli and Theodore base their claims solely on the alleged failure to interview them, "regardless of whether they would have ultimately been selected for the position." (*See* Am. Complt., ¶¶ 94, 105, 109.) This effort is unavailing. Fundamentally, the Eleventh Circuit has not held that the denial of an interview qualifies as an adverse employment action, and these allegations do not suffice when Critelli and Theodore cannot allege that Defendants filled the positions with individuals outside their protected classes. *See Glover*, 2019 WL 6340087, at \*1, \*3 (ruling that black plaintiff did not "plausibly suggest discrimination . . . because he ha[d] not alleged that each position was filled by a person outside his protected class" notwithstanding his allegation that he "was not offered a single job interview" while white employees received interviews); *Toomer v. Ricketts*, CV419-039, 2019 WL 4166783, at \*1, \*3 (S.D. Ga. Aug. 30, 2019) (ruling that plaintiff failed to state claim even though he "was not interviewed" because he failed to "allege that the position was ultimately filled by a person outside his protected class").

But such vague and ambiguous allegations are unavailing. Eggerichs only seeks relief for race discrimination under § 1981. Discrimination on the basis of gender is not actionable under § 1981. *See Harrell v. City of Opa-Locka*, No. 20-21927-CV-ALTMAN/Goodman, 2020 WL 13904211, at *1 (S.D. Fla. Oct. 18, 2020) ("Sex or gender discrimination claims are not cognizable under 42 U.S.C. § 1981."). To the extent Eggerichs claims that Pall filled the positions he did not receive, he does not plead which positions (if any) were awarded to "non-whites." Likewise, Cunningham alleges race discrimination. However, Cunningham pleads no facts that the positions he was allegedly denied went to POC. To the contrary, he alleges that both promotions he was denied were awarded to female employees and does not include allegations regarding their race. (Am. Complt., ¶ 120.) Accordingly, Eggerichs and Cunningham's allegations do not support their race discrimination claims. And, while Kumnick speculates that "many" POC and female applicants "were ultimately selected over Plaintiff" and "80% or more of the salespeople who were promoted were women," he pled these allegations on "information and belief." (*Id.*, ¶¶ 134, 136.) Such "information and belief" allegations do not plead plausible claims, particularly when the Amended Complaint fails to allege the factual bases underlying the alleged "information and belief." *See Misquith v. Borrego*, No. 20-81123-CIV-CANNON/Reinhart, 2022 WL 782545, at *3 (S.D. Fla. Mar. 15, 2022) ("[Plaintiff's 'upon information and belief' allegation] is simply a variation of pleading an element of a cause of action without factual support and will not withstand a motion to dismiss.");

*Kidd v. Jasper, City of*, No. 6:17-cv-1180-TMP, 2018 WL 2766058, at *1-2, *7 (N.D. Ala. June 8, 2021) (ruling that motion to dismiss was due to be granted because black plaintiff's allegations that "upon information and belief, two white employees have been hired," were "insufficient to allege racial discrimination"). And, again, Kumnick does not plead facts that he applied for a particular position, much less that Radiometer could have selected someone else for that particular position.

A related defect: Plaintiffs have not alleged sufficient information to determine whether those who received positions qualify as similarly situated. *See Hair v. Autonation USA Corp.*, No. 6:25-cv-359-CEM-LHP, 2025 WL 2147084, at *3 (M.D. Fla. July 7) (Price, Mag. J.) (finding that complaint failed to state claim because "other than a conclusory statement, [plaintiff] identifies no similarly situated employees that were treated differently"), *report and recommendation adopted*, 2025 WL 2144661, at *1 (M.D. Fla. July 29, 2025) (dismissing complaint); *Walton v. Ga. Dep't of Cmty. Affs*, No. 1:21-CV-4164-MHC-CMS, 2022 WL 3337406, at *3, *6 (N.D. Ga. July 6, 2022) (collecting cases and granting motion to dismiss because black plaintiff "fail[ed] to plausibly allege that she and the Asian-American female were similarly situated in all material respects so as to infer that race discrimination was the likely reason for the latter's advancement").

At best, most (not all) Plaintiffs allege that those who received positions, interviews, or other opportunities were "less qualified," with no factual support.

(Am. Complt., ¶¶ 102, 107, 112, 120, 136.) Plaintiffs' subjective and conclusory speculation about their purported comparators' qualifications do not support a plausible discrimination claim. *See Butler*, 2025 WL 2299377, at *4, *6 (granting motion to dismiss because "[i]nstead of specific allegations identifying similarly situated employees, Plaintiff relies upon broad generalities" regarding promotion qualifications that "constitute the sort of recitals that *Twombly* and *Iqbal* prohibit"); *Garvey v. Sec., U.S. Dep't of Lab.*, No. 8:22-cv-2309-WFJ-AEP, 2023 WL 4405571, at *1, *3, *5 (M.D. Fla. July 7, 2023) (granting motion to dismiss because only information provided regarding potential comparator was that "he is a 'Venezuelan born,' 'less experienced male' who 'never held a position of District Director within the Agency' before being selected for the District Director position that [American female] Plaintiff wanted").

Additionally, Critelli, Theodore, Eggerichs, and Cunningham allege no facts that any of the decisionmakers knew their race when they made the employment decisions at issue.[10] Rather, they rely solely on their conclusory allegations that Defendants intentionally discriminated against them based on their race. (*See, e.g.*, Am. Complt., ¶¶ 1, 176.) Naturally, an employer cannot intentionally discriminate against a plaintiff due to race unless the defendant knows the plaintiff's race. Absent such allegations (at a minimum), Critelli, Theodore, Eggerichs, and Cunningham's mere subjective belief that they were discriminated

---

[10] To clarify, Defendants do not raise this argument with respect to any positions for which these Plaintiffs claim they received interviews.

against because of their race is legally insufficient. *See McKenzie v. Forever 21*, No. 1:18-CV-05388-TWT-CMS, 2018 WL 11599888, at *1 (N.D. Ga. Dec. 4, 2018) (ruling that complaint was subject to dismissal when there were no allegations regarding defendant's knowledge of plaintiff's race); *Griffin v. Randstad Staffing Agency*, No. 12-61715-CIV-ROSENBAUM/SELTZER, 2012 WL 12860754, at *1, *4 (S.D. Fla. Nov. 28, 2012) (granting motion to dismiss and noting that "Plaintiff has not even alleged that the decision-makers had knowledge of his race"); *Taite v. Ala., Dep't of Pers.*, No. 2:11CV739-MHT, 2012 WL 3631619, at *2 (M.D. Ala. July 16) (noting in finding motion to dismiss due to be granted that plaintiff did not "expressly allege . . . defendants even knew her race"), *recommendation adopted*, 2012 WL 3629216, at *1 (M.D. Ala. Aug. 23, 2012) (granting motion to dismiss).

## IV.    Plaintiffs Fail To Sufficiently Plead Basic Rule 23 Class Requirements.

The basic pleading standards apply with equal force to class action complaints. *See, e.g., King v. UA Loc. 91*, No. 2:19-CV-01115-KOB, 2021 WL 2453995, at *7, *13 (N.D. Ala. June 16, 2021) (citing *Iqbal*, 556 U.S. at 679) (granting motion to dismiss class allegations because complaint did not "plausibly allege facts sufficient to support class certification"). And sometimes "the issues are plain enough from the pleadings . . . to address the matter of class certification" pursuant to a motion to dismiss. *See id.* at *6-7 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) and Rule 23(c)(1)(A) (noting that "nothing in Rule 23 precludes the consideration of class certification issues

in the context of a motion to dismiss"); *see also Bush v. Honda Dev. & Mfg. of Am. LLC*, No. 1:25-cv-00893-RDP, 2025 WL 1830702, at *3 (N.D. Ala. July 2, 2025) ("[T]his court has some responsibility to ensure there are valid class allegations presented before requiring the parties to embark on time-consuming and expensive Rule 23 discovery and motion practice."); *Saunders v. BellSouth Advert. & Publ'g Corp.*, No. 98-1885-CIV, 1998 WL 1051961, at *1 n.1 (S.D. Fla. Nov. 10, 1998) (rejecting argument that motion to dismiss class action was improper, as "23(c)(1) requires that courts determine whether a class action can be maintained '[a]s soon as practicable'"). This is one of those times.

A plaintiff alleging a Rule 23 class must plead "all four prerequisites of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy," and after that, either Rule 23(b)(2) or (b)(3). *See King*, 2021 WL 2453995, at *6-7. Plaintiffs cannot do so.

Under Rule 23(a)(2), Plaintiffs must show that their claims depend upon a "common contention" that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). In *Wal-Mart Stores, Inc.*, the U.S. Supreme Court rejected certification of a class challenging discretionary promotional decisions on a nationwide basis. *Id.* at 344-45, 367. Given that employment discrimination claims turn on the reason for a particular employment decision, it held that it is impossible to resolve class claims "[w]ithout some glue" connecting each decision. *See id.* at 352. Here, Plaintiffs admit that the "hiring decisions" were

16

made by numerous individual hiring managers. (*See* Am. Complt., ¶¶ 78-79.)[11]
Thus, Plaintiffs' claims implicate an unknown number of employment decisions
from coast to coast[12] made by potentially hundreds of decisionmakers over
several years concerning every single job title (from janitor to CEO) for nearly 20
different companies, most of whom are not even parties to this case. (*See id.*, ¶¶
10, 142-48.) This directly invokes *Wal-Mart Stores, Inc. See* 564 U.S. at 356.

Plaintiffs cannot realistically stretch the alleged "DEI Policy" as a common
denominator capable of resolving potentially thousands of discrete, individual
employment decisions. Even if Plaintiffs' speculation was true that hiring
managers were "encouraged" and "pressure[d]" toward discriminatory practices
(they were not), that would not implicate every hiring decision made at each of
nearly 20 companies across the country since 2021. (Am. Complt., ¶¶ 10, 79-80,
142-48.)[13] To determine if intentional discrimination occurred, each decision still
must be analyzed individually. *See Reid v. Lockheed Martin Aeronautics Co.*, 205
F.R.D. 655, 669-70 (N.D. Ga. 2001) (finding that policy did not satisfy
commonality when different business units administered actual employment
practices and supervisors still made promotion decisions). Additionally, Plaintiffs
cannot plead commonality by alleging that "white men were disproportionately

---

[11] Plaintiffs use the term "hiring" relative to both the promotion of current internal candidates
and the new hire of external job applicants. (*See, e.g., id.*, ¶ 80.)

[12] Indeed, as pled, the Amended Complaint theoretically involves employment decisions outside
of the United States and around the globe. (*See id.* ¶¶ 142-43.)

[13] Notably, there would be no need for Plaintiffs to make these allegations if hiring managers did
not have ultimate hiring authority in the first place.

excluded from the interview pool" so that 50% of those who the hiring manager interviewed would be from "'underrepresented' populations." (Am. Complt., ¶¶ 62, 64, 70.) Alleging another layer of practices at issue and "individuals involved in the process of making employment decisions" only "defeats a commonality showing." *See Case v. Judd*, No. 8:19-cv-607-T-33TGW, 2020 WL 440069, at *6 (M.D. Fla. Jan. 28, 2020); *King*, 2021 WL 2453995, at *11-12 (ruling that commonality was not satisfied when multiple practices and actors were at issue); *Rhodes v. Cracker Barrell Old Country Store, Inc.*, 213 F.R.D. 619, 677 (N.D. Ga. 2003) ("Commonality simply is not present" when claim "would require the Court to analyze several different individual hiring decisions—including who Defendant interviewed and hired for each position."). Further, this "50%" framework would not generate common claims by definition—while Plaintiffs make a point to characterize the denial of an interview as a distinct claim, by Plaintiffs' own admission, many putative class members were admittedly interviewed. (*See, e.g.*, Am. Complt., ¶ 94.)[14] Finally, Defendants still intend to show legitimate, non-discriminatory reasons for each challenged decision, but those, again, must be on an individual-by-individual basis. *See Perrero v. Walt Disney Parks & Resorts U.S. Inc.*, No. 6:16-cv-2144-Orl-41TBS, 2017 WL 10080202, at *5 (M.D. Fla. June 19, 2017) (ruling that plaintiffs could not satisfy

---

[14] Indeed, while some Plaintiffs allege that they were denied interviews, at least four Plaintiffs indicate that they received interviews, at least some of the time. (*See id.* ¶¶ 100, 113, 119, 124.)

commonality due to defendant's "inten[t] to present evidence that it made separate employment decisions for every person" not hired).

Plaintiffs' failure to properly plead their own claims also precludes their ability to serve as adequate representatives of the proposed classes under Rule 23(a)(4). First, to the extent the Court finds that Plaintiffs fail to state claims in their individual capacity as discussed above, Plaintiffs cannot adequately represent the putative classes with respect to those claims. *See Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1357, 1362 (N.D. Ga. 2017) (granting motion to dismiss because "[c]lass claims are required to be dismissed for this reason"); *cf. Tarvin v. DirecTV*, No. 2:15-cv-01237-AKK, 2016 WL 6246813, at *5-6 (N.D. Ala. Sept. 13, 2016) (granting motion to dismiss and ruling that plaintiff failed to plead class claims in light of court's decision to dismiss her individual claim). Second, Plaintiffs do not plead facts showing that they are members of the proposed classes. A class representative must be a member of the class he seeks to represent. *See E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403-05 (1977); *see also, e.g.*, *Gittens v. Sch. Bd. of Lee Cnty., Fla.*, No. 2:16-cv-412-FtM-99MRM, 2017 WL 3142038, at *13 (M.D. Fla. July 7) (finding that plaintiff could not "adequately represent a putative class of employees of which she is not a member"), *report and recommendation adopted*, 2017 WL 3131364 (M.D. Fla. July 24, 2017). Here, Plaintiffs define their putative classes as including white men who "applied for an internally posted position" and "satisfied the posted job requirements" where "such posted position was awarded

to [as applicable] a woman or [POC]." (Am. Complt., ¶¶ 142-48.) Kumnick does not allege that he applied for an internally posted position. Plaintiffs also do not allege that they satisfied the posted job requirements for the positions to which they did apply (or even what those "posted job requirements" were by and large). Indeed, Cunningham pleads that he did not satisfy the requirements of the position to which he applied. (*Id.*, ¶ 115 (alleging that Cunningham "did not fulfill the job's residency requirement").) Critelli, Theodore, and Volek do not allege that the positions to which they applied were filled, much less by a woman or POC. Eggerichs only alleges that he "lost out on promotional opportunities that were awarded to less qualified women or non-white employees." (*Id.*, ¶ 112.) This allegation does not state that any particular position was awarded to a POC, as the definitions of his proposed § 1981 classes require. (*Id.*, ¶¶ 143-44.)

Rule 23(b)(2) is unavailable to plaintiffs who seek individualized monetary relief. *See Wal-Mart Stores, Inc.*, 564 U.S. at 360. Here, Plaintiffs cannot sufficiently plead a Rule 23(b)(2) class because they seek individualized relief for each class member, including reinstatements, front pay benefits, back pay (including interest and benefits), and emotional distress, exemplary, punitive, and other damages. (Am. Complt., ¶¶ 170, 177, 183, 189, 195, 201); *see Bush*, 2025 WL 1830702, at *4 (finding that plaintiff's requests for "'back pay; front pay; lost job benefits; [and] preferential rights to jobs' . . . must be determined on an individualized basis"); *King*, 2021 WL 2453995, at *12 (ruling that plaintiffs' requested relief, including reinstatement, back pay (plus interest), and

compensatory and punitive damages, precluded Rule 23(b)(2) certification); *Saunders*, 1998 WL 1051961, at *2 (ruling plaintiffs' proposed class action could not "as a matter of law, be maintained under Rule 23(b)(2)" when plaintiffs sought compensatory and punitive damages).

Rule 23(b)(3) requires that common issues "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This is "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). As described above, Plaintiffs' Amended Complaint shows that they cannot satisfy even the lower standard of commonality under Rule 23(a), much less the more rigorous predominance requirement of Rule 23(b)(3). Courts in this Circuit have ruled that the highly individualized and fact-specific issues in Plaintiffs' asserted class claims prevent them from properly pleading a putative class under Rule 23(b)(3). *See Bush*, 2025 WL 1830702, at *4 (finding that "predominance is likely not met" in light of requested relief that "must be determined on an individualized basis"); *King v. UA Loc. 91*, No. 2:19-CV-01115, 2020 WL 4003019, at *15-16 (N.D. Ala. July 15, 2020) (striking class claims for failure to satisfy 23(b)(3) because "every new Plaintiff would necessarily require additional evidence regarding the context of each choice a Defendant's supervisor or manager made in selecting someone else for every position, thus requiring the court to consider the circumstances surrounding each of thousands of placement decisions made by an unstated but certainly high number of decisionmakers"); *Saunders*, 1998 WL 1051961, at *2

21

(ruling that class allegations failed under 23(b)(3) "as a matter of law" since resolving complaint would "require distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination," such as "the various job descriptions" and "the employment histories of the various class members" and "other individuals considered for the respective job"); *cf. Reid*, 205 F.R.D. at 684 ("[A]llegations of discrimination in promotions . . . are by their very nature extremely individualized and fact-intensive claims."). As "Plaintiffs' claims and the relief sought are inherently individualized and fact-intensive," this "case does not present any reason to break from the pack." *See Perrero*, 2017 WL 10080202, at *3. Plaintiffs' class allegations should be dismissed.[15]

Finally, to the extent they attempt to do so, Plaintiffs have not adequately pled a "pattern or practice" claim. Plaintiffs may arguably establish these claims through "strong statistical evidence" along "with anecdotal evidence of the employer's intent to treat the protected class unequally." *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1325-26 (11th Cir. 2006). Here, Plaintiffs fail to identify a single potential class member who Defendants failed to promote for discriminatory reasons. Furthermore, Plaintiffs merely attempt to cite an alleged statistical disparity among new hires—not promotions and employees applying for internally posted positions, which is the more accurate description of

---

[15] These pleading shortfalls fatally infect Plaintiffs' proposed subclasses, as well—any difference is simply one of magnitude. *See Rhodes*, 213 F.R.D. at 683 ("The proposed subclasses [ ] do not make class certification appropriate" because they "still present many of the problems" preventing certification overall.).

Plaintiffs' claims and the putative classes they seek to represent—and even that allegation amounts merely to a legal conclusion. (Am. Complt., ¶¶ 88-91 (making unsupported assertion that "[w]hite men made up far more than 1/3 of the qualified applicant pool").) Plaintiffs' pattern or practice claims should be dismissed. *See Henley*, 267 F. Supp. 3d at 1360-62 (finding that plaintiffs failed "to plausibly allege a pattern and practice" given "paucity of generalized anecdotes" and statistics that did "not provide support for the claims asserted").

## V.    Plaintiffs Fail To Sufficiently Plead A Claim Against Danaher.

Danaher is not a proper defendant in this case. Plaintiffs speculate that Danaher and its operating companies constitute an "integrated enterprise," or that Danaher is a "joint-employer" of these companies' employees. (Am. Complt., ¶¶ 37, 39.) With respect to the former theory, the law does not treat related corporations as a single entity without consideration of multiple factors, such as: (1) the interrelation of operations; (2) whether there is common management; (3) whether there is centralized control of labor relations; and (4) whether there is common ownership or financial control. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999). To determine whether a defendant is a joint employer, courts consider "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment." *Peppers v. Cobb Cnty., Ga.*, 835 F.3d 1289, 1297, 1301 (11th Cir. 2016) (holding that "the focal point of the inquiry is not which entity controlled the specific aspect of the

relationship giving rise to a discrimination claim, but rather which entity or entities controlled the fundamental and essential aspects of the employment relationship when taken as a whole"). Where a plaintiff names multiple entities but fails to allege facts supporting these factors, dismissal is appropriate. *See, e.g., Bryant v. Delta Glob. Servs.*, No. 1:24-cv-2828-TRJ-CMS, 2025 WL 1021489, at *6 (N.D. Ga. Feb. 10) (finding that "allegation of a parent-subsidiary relationship . . . is insufficient to show that there was an employment relationship"), *report and recommendation adopted*, 2025 WL 1020789, at *2 (N.D. Ga. Feb. 28, 2025) (granting motion to dismiss).

In *Williams v. Augusta, GA*, No. CV 121-145, 2022 WL 3367520, at *5, *9 (S.D. Ga. Aug. 15, 2022), for instance, the court granted two defendants' motions to dismiss upon finding that they were not the plaintiff's employer. In particular "looking at the employment relationship taken as a whole," the court found that the first defendant did not have control over the day-to-day operations of the plaintiff's office. *Id*. at *1, *5. Additionally, although the court found that the second defendant compensated the plaintiff and the plaintiff was subject to that defendant's employee manual, that defendant also was not responsible for day-to-day operations, or establishing the plaintiff's job responsibilities or supervising the plaintiff in any way. *Id*. at *9.

Here, Plaintiffs baldly allege that "Danaher's level of policy-making and financial control creates an integrated enterprise" and that Danaher is a joint employer "because Danaher exerted significant control over the terms and

conditions of its [operating companies'] employees." (Am. Complt., ¶¶ 37, 39.) Plaintiffs have pled virtually no facts per the operative tests to support their conclusion that Danaher was their employer. Plaintiffs have not pled that Danaher actually had the power to hire, fire, supervise, or discipline them, nor could they, as the respective and distinct operating companies that employed them are the final decision makers on the selection, retention, management, and separation of their employees. Indeed, just taking an example from their Amended Complaint, Plaintiffs concede that hiring managers (at the operating companies) make the "hiring decisions." (*Id.*, ¶¶ 78-79.) As another example, Kumnick specifically alleges that "Mr. Gillespie, Head of Sales for the U.S., under the direction of Tiffany Murphy, Vice President of Radiometer, informed Plaintiff he would not be considered for a promotion." (*Id.*, ¶ 135 (emphasis added).) Kumnick does not allege any facts that Danaher was involved in this decision, much less his employment taken as a whole—only conclusions at best. Therefore, Plaintiffs' claims against Danaher also must be dismissed on this ground.

**CONCLUSION**

For all of the reasons set forth above, Defendants respectfully request that the Court grant their Motion and dismiss Plaintiffs' Amended Complaint, in its entirety.

DATED:  March 5, 2026   Respectfully submitted,

**SEYFARTH SHAW LLP**

*/s/ Christopher J. DeGroff*
Christopher J. DeGroff
(admitted *pro hac vice*)
CDeGroff@seyfarth.com
Michael D. Jacobsen
(admitted *pro hac vice*)
mjacobsen@seyfarth.com
Seyfarth Shaw LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

Robin N. Khanal
Florida Bar No. 0571032
rkhanal@qpwblaw.com
Quintairos, Prieto, Wood & Boyer, P.A.
255 South Orange Avenue
Suite 900
Orlando, Florida  32801
Telephone: (407) 872-6011
Facsimile: (407) 872-6012

*Attorneys for Defendants*

## Local Rule 3.01(g) Certificate

Pursuant to Local Rule 3.01(g), the undersigned counsel for Defendants certifies that counsel for Defendants has conferred with Plaintiffs' counsel by video teleconference, Plaintiffs oppose the relief requested by this Motion, and Plaintiffs' counsel do not agree in part or in whole on the resolution of the Motion.

*/s/ Christopher J. DeGroff*
Christopher J. DeGroff
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I certify that on March 5, 2026, I electronically filed this document with the Clerk of Court using CM/ECF, causing a copy to be served on all counsel of record.

*/s/ Christopher J. DeGroff*
Christopher J. DeGroff
*Attorney for Defendants*

27